Good morning, your honors. Lee Horner for the surviving appellant Myrna Ball. I would like to reserve two minutes for rebuttal if it pleases the court. This is essentially an appeal grounded in basic contract law. There's three areas I think that we should focus on. First off, was there a formation of a contract? Because if there was no formation for want of meeting of the minds, then we're done. If there was, the next question is, was there an implied term in this agreement in the form of the AAA franchise that was not transferred? And finally, if that implied term is included, then was the contract executory when the debtors filed bankruptcy and relief was ordered? Now, the formation issue, it's pretty straightforward. There has to be a meeting of the minds before you can have a contract. The bankruptcy couldn't intend that the buyer, Ball, that was your client. Yes, sir. He couldn't buy this business because Spira, if that's the way you pronounce it. Correct. He had a contract with AAA, and that resulted in 1,500 tows a month. Yes, sir. And he wouldn't have bought the business if he didn't have that contract. And the contract was, what was the missing element of the meetings of the minds that they didn't agree upon? Well, the writing that the Court referred to saying because you have a writing, there's a contract, which isn't really the law, but the writing said nothing about transfer. It did say that Mr. Spira would cooperate and attend any meetings. Nothing about transfer of the AAA contract. Yes, sir. Yes, that's correct. But Spira would cooperate and attend any meetings with AAA that were required for the 30-odd months duration of the payment of the unpaid balance. Now, of course, the question is, why would you need a clause like that if the AAA contract's transfer was not an implicit part of the deal? In fact, the Court found it was a material part of the bargain. Well, if it was an implicit part of the deal, maybe the deal was contingent upon AAA agreeing to substitute Ball for Spira in the contract. So then you would, if the deal went through, you would then have a contract between AAA and Ball. Correct. Then you wouldn't need Spira to attend these meetings. That's exactly right. So what? But if you didn't have a contract between AAA and Ball, maybe Spira would attend those meetings to try to help get them together. Your Honor, it was a homemade contract. Previous discussions, attorney-prepared discussions were more clear than that, saying that the contract is a specific condition of the sale of the business, the transfer of the franchise. It could have been better. Of course, it was Mr. Spira that also prepared this contract that the Court is discussing. And if it's ambiguous, and we contend that it is, in the sense that why do you need a AAA meeting agreement if there's no AAA contract that's being transferred? That ambiguity would, as a matter of law, be construed against the draftsman. Well, that's a pretty common provision, even in a lawyer-drafted contract, as opposed to what you refer to as a homemade contract, that you will have cooperation from the seller for a period of time. I mean, that's not unusual. Well, that's true. But this was specific to attend AAA meetings between the franchisee and AAA. It's a little more than cooperating, say, with a bulk sale, where you're going to sign everything escrow comes up with, and who knows what that's going to be until we get into it. In the mind of Mr. Ball, his testimony was, and this is why he had handwritten in and initialed by everybody, the stock of Spira's corporation had to be transferred within 30 days. In Mr. Ball's mind, the franchise would follow the stock transfer. Stock transfer never took place. Ball took possession of the business, started paying, and when the contract was canceled, quit paying, basically. So the issue, of course, that begs the question, was there an implied agreement here? The testimony is clear. The record shows the trucks were painted with AAA colors. They had the trademark logos on them. They were dispatched with AAA-owned two-way radios in the trucks and from a AAA-owned computer at the shop. And it's 90 percent of the business. Now, there was some mention that, well, Mr. Ball didn't cooperate with AAA. Well, didn't fill out some papers. That, of course, was in our brief on page 13 that we cite specifically to the record. Mr. Ball was offered an auxiliary AAA contract, which if there's any overflow, apparently, you get one or two deals a month. Waste of time. What he was buying was a contract, a full-fledged franchise for 1,500 tows in that jurisdiction, not two deals a month. So the failure of that condition, we contend, excused performance as a matter of state law. The other issue, though, is if we now have reached the waterfall level where, yes, there was a formation, but if there's a meeting. You can't argue there's not a formation of a contract. In fact, I think when both parties sign and you have money exchange, you may quibble about what the terms were. Well, if the mines don't meet, Your Honor, there is no formation, even though there was some performance and money did change hands. That isn't specifically cited to a case, but that is the general issue of contract law. So if, in fact, the Court finds there was a meeting of the mines and there was an implied agreement between the parties, and it clearly was not expressed, it was implied by the circumstances surrounding the case, the next question is, was it executory? And as we briefed, executory nature of a contract is not defined in the Bankruptcy Code. Now we're getting into a bankruptcy issue. But basically, it's where there is performance yet to be done on both sides. As we cited to the record, the debtor, Spira, admitted the contract was contingent and unliquidated in his bankruptcy schedules, which were under oath. He did not say it is non-contingent and liquidated on his part, meaning there's nothing further to be done. In fact, the titles to the vehicles had not been transferred as of the date relief was ordered, that is, bankruptcy was filed. And, of course, by the time bankruptcy was filed, the AAA contract had evaporated. Now, an executory contract that a trustee in bankruptcy wants to enforce, as the Court is aware, assurances must be given on this part of the bankruptcy estate that it will be performed on their end. In this case, if we have the implied term enforced that the AAA contract is to be transferred, there has to be assurances it will be transferred. But, you know, I think everyone agrees that the two parties couldn't effect the transfer of the AAA contract, correct? I mean, the AAA needed to approve the transfer. Apparently so. See, the problem we have is the contract itself is not in the record. And we don't have any evidence other than hearsay why AAA terminated. And what is in the record is – Well, it had the right – I mean, I think everybody agrees the AAA had the right to terminate the contract, correct? That's what they did. Whether they had that right, that's what happened. Mr. Ball did not sue them, nor did Mr. Spera. They're a missing part of the puzzle. So this is why we're falling back on the issue of contract formation, basic contract law in California. So if there's any other questions, I'll just reserve the balance of my time. Sure. Thank you. Thank you. May it please the Court. I'm Gregory Hughes, the attorney for Michael Burkhart, the trustee and respondent in this case. The Balls are trying to get this court to rewrite the purchase agreement that was signed 10 years ago to make a deal different from what the parties agreed upon. The basic problem is that the Balls bought a business from Spera and then didn't pay the agreed-upon amount. Everything argued by the debtors is designed to allow them to keep the business without paying for it. Ultimately, this is a fact-driven case. The trial court's decision determining the facts was not clearly erroneous. Well, keep what's left of the business. I mean, I think everyone agrees that the AAA contract was the centerpiece of the business. I mean, it was the contract that provided most of the income. Sure. So that deal fell apart, and now the business, they sold it today. I don't know if we have a valuation. The record is not worth anything, is it? Well, we don't know that. There is no valuation in the record. Right. You have the physical property, but that's about it. The business has remained open. It hasn't closed. As far as we know, it hasn't filed bankruptcy. It has some value. But the point is that in buying the business, the Balls took the risk that the AAA contract would be terminated, just as you would anything else, any other kind of business that has a, you know, a third party involved in it. There's a risk that the business will go down, a risk that a supplier will go out of business. They assumed that risk. But if it was not part of the agreement to begin with, you can't retroactively put it into the agreement. This Court cannot rewrite the contract to put terms in that weren't there. What do we do with the BAP's conclusion that the transfer was a material part of the transaction? I'm not sure that the BAP said that. So I'm not sure what we do about that. I think it may have been something that the Balls were concerned about, but the fact is they didn't put it into the agreement. And if it's not part of the agreement, then, you know, as Mr. Horner has indicated, there's, you know, he's arguing two things. There was no agreement, or if there was an agreement, it was an implied part of the agreement. And, you know, clearly there was an agreement for the sale of the business. The trial court and the Bankruptcy Appellate Panel both ruled that there was an agreement for the sale of the business. There was a written purchase agreement which set out the what was being sold and the payment terms and the purchase price. And it's ludicrous to say that there was no agreement. The parties acted as if there was a sale. The Balls have held the business for 10 years. On the implied covenant question, was there an implied covenant? The Balls have never made clear what the terms of that implied condition were. They've argued that it was a condition that the contract had, the AAA contract had to be transferred. They've also argued that it was a condition that the AAA contract had to continue. They've never articulated exactly what the covenant was. And there was no testimony, no evidence presented regarding this implied covenant. Nobody got on the stand and said, oh, there was an implied covenant here. What's the status of the bankruptcy now? It's awaiting the outcome of this case. So this is the last asset to be liquidated. It's the only asset. The only asset. And what's in terms of the distribution, proposed distribution, if you collect the money, is there's what percentage will be distributed to unsecured creditors? I don't know. I mean, is it 100 percent or less or do you know? Well, it'll be less than 100 percent. Yeah. The percentage will be less than 100 percent because the money that's available is less than the amount of the unsecured creditor claims in the case. So none of this will go back to, should go back to the Sparrows. It's just a normal Chapter 7 case where there's an asset, the trustee liquidates it, and then the money is distributed to creditors. Have you talked, it will not affect our decision, but have you talked substantially to the case? Because it occurs to me, when I first picked up this case, you may not be able to collect this debt. We already have. We have a judgment. We executed on it. They did not get a state pending appeal. So collectability is not a problem. It's a little unusual, but we were able to execute on the judgment because there was no state. I didn't appreciate that. The reply states, Ball testified that without the AAA contract there was no deal in his mind. And that's at page 7, a direct quote from the reply. What is in Mr. Ball's mind is not germane. Under the objective theory of contracts, mutual consent is gathered from the reasonable meaning of the words and acts of the parties and not from their unexpressed intentions or understandings. The unexpressed state of a party's mind is immaterial. The key is the terms of the agreement. A party will be bound, even if he had an unexpressed intention or understanding, he's bound by the terms of the agreement that he signed. And that's what we have here. One who accepts or signs an instrument which on its face is a contract is deemed to have consented to all its terms. And it doesn't matter if in his mind he thought that there was something else, he had an unexpressed intention, or he thought that there was something left out. We're bound by the terms of the agreement. Now, on the executory contract issue, the issue was not raised at trial, and the trial court never ruled on it. On the merits, the purchase agreement was not executory because the sale was consummated before the bankruptcy. This Court's decision in Pacific Express is directly on point, where you have a sale arrangement and the assets are transferred, the contract is no longer executory. The fact that there was an argument – excuse me – that there was a listing in the – in the schedules of the contract as being contingent and unliquidated does not make it executory. All it means is that it was contingent and unliquidated. Executory is a completely different concept. The provision regarding attending meetings, both Mr. Ball and Mr. Spera were asked about that provision, and neither of them said that it was related to the AAA contract. Mr. Spera said, I put it in there because Mr. Ball wanted it. Mr. Ball said, I requested it in case there were meetings that I needed him to attend. Nothing about the AAA contract. Thank you. Roberts. As far as the executory nature sort of going in reverse order, if the contract was admitted by the debtors as being contingent, exactly what was the contingency? See, this isn't real clear. As far as mistake in the minds of the traders, mistake vitiates consent. There has to be consent in the meeting of the minds on what is being agreed to. And we're totally in agreement. Words and acts of the parties govern what they intended. Here it would have been a lot clearer if we had attorney-prepared – well, should have been clearer if we had attorney-prepared documents. But as it is, we have a business that's being bought with 90 percent of the business coming from AAA. We know it's AAA. All the evidence is it's a AAA contract. And Mr. Ball inserts what he thought would get the job done. The stock of Spears Corporation has to be transferred by a date certain, so I will get the AAA contract. He thought that would automatically do it, agree or disagree. Aside from the transfer of the AAA contract, what do you contend is unperformed in the contract? Well, Mr. Hughes is correct. They have levied on the money that was set aside to pay this as a contingent reserve. So they've got all the money sitting in their trust account. Yeah, I didn't appreciate that. What happened at the time we filed our opening brief, they had not yet transferred title to the vehicles, the mortgage vehicles that the Balls purchased. That has since taken place. It's not in the record. I don't know if it's germane. So the stock has not been transferred. The corporation suspended. That is in the record. So those contingencies are still out there. They've said, I believe, in the record that they're prepared to transfer the stock. Now, whether that means reinstate the corporation, I don't know. But the key issue, of course, is the AAA franchise agreement. That has to be transferred. We're not asking the court, and we didn't ask the court to rewrite the agreement. We're asking the court to determine was there a formed agreement, was there meeting of the minds, and was there an implied agreement based on 90 percent of the business coming from the franchise. And the court is right. The BAP did recite on page 7 of its memorandum that the AAA contract was a material part of the agreement, and it's citing to the record, which Judge Russell, the trial court, so found. It specifically said that. Memorandum decision page. Well, what it says is that the, I'm quoting now, there's no doubt that the AAA contract was material to the parties. And then it goes on to say the transfer was a material term in the agreement. So although I think the BAP recognized it was an important part of the transaction from the party's point of view, it goes on to say, well, you didn't put it in the contract. Well, it wasn't so obvious it was implied. That's the other part of the law that allows that. Let's see. And the other thing I just wanted to make clear, that there was no failure in the record of Mr. Ball to do or not do anything, other than the testimony about him not filling out papers for an auxiliary contract, which is not what he bargained for. There's no evidence that he, for example, totally blew the service, didn't show up on time, or had drivers that were drunk or something like that. No evidence at all that Mr. Ball is culpable in any way for the termination of that agreement. It looks like, standing on the sidewalk looking at it, AAA said you can't transfer our contracts, and that's it. So there we have a complete failure. Are there any other questions? No, I don't think so. Thanks so much for your argument. Thank you so much. Thank you for coming here today. And the case history will be submitted.
judges: Aldrich, Thompson, Thomas